UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ROBERT KEAR,

                                        Plaintiff,

        -   against -

KATONAH LEWISBORO CENTRAL SCHOOL
DISTRICT, KATONAH LEWISBORO CENTRAL
SCHOOL DISTRICT BOARD OF EDUCATION,               05-CV-7038 (CS)
RICHARD BECKLEY in his individual capacity as
Athletic Director of the Katonah Lewisboro School
District, ROBERT LICHTENFELD in his individual      **MEMORANDUM DECISION**
capacity as Superintendent of the Katonah Lewisboro        **AND ORDER**
School District, and 1-100 unknown administrators,
employees, agents and assigns of the Katonah
Lewisboro Central School District, in both their
individual and official capacities,

                                        Defendants.
----------------------------------------------------------------x

<u>Appearances</u>:

Peter David Hoffman
Stuart Goldberg
Law Office of Peter D. Hoffman, PC
Katonah, NY
*Counsel for Plaintiff*

Jonathan Harwood
Daniel G. Ecker
Traub Lieberman Straus & Shrewsberry LLP
Hawthorne, NY
*Counsel for Defendants*

<u>Seibel, J.</u>

        Before this Court is Plaintiff Robert Kear's Motion for Reconsideration (Doc. 54),

filed on April 18, 2008.

**I.      <u>Background</u>**

This action arises out of a Complaint, filed on August 8, 2005, claiming (1) age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), and the Fourteenth Amendment, 42 U.S.C. § 1983; (2) gender discrimination under Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Fourteenth Amendment, 42 U.S.C. § 1983; (3) age discrimination under New York Human Rights Law § 296; (4) gender discrimination under New York Human Rights Law § 296; and (5) breach of contract.  An Amended Complaint was filed on February 22, 2007, alleging no new facts, but adding a sixth claim for hostile work environment.  The Court assumes the Parties' familiarity with the factual background of this case.

On February 8, 2008, Defendants moved for summary judgment on all claims. (Doc. 34.)  Judge Brieant, to whom the case was then assigned, held a hearing on March 28, 2008, and granted the Motion on April 7, 2008.  (Doc. 49.)  Judgment was entered and the case was closed on April 18, 2008.  (Doc. 50.)  The same day, Plaintiff filed a motion for reconsideration.  (Doc. 54.)[1]  Judge Brieant heard argument on the Motion for Reconsideration on May 30, 2008, but passed away before deciding it.[2]  For the following reasons, Plaintiff's Motion for Reconsideration is granted in part and denied in part.  Upon reconsideration, summary judgment remains appropriate.

## II.   Discussion

Motions for reconsideration are within the sound discretion of the district court. *Reddy v. Salvation Army*, No. 06-CV-5176, 2008 WL 4755733, at *1 (S.D.N.Y. Oct. 27, 2008).  "The standard for granting such a motion is strict, and reconsideration will

---

[1] Due to a filing error, the Motion for Reconsideration was not flagged as a motion on the Court's ECF system.

[2] Judge Brieant died on July 20, 2008.

generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *accord Rafter v. Liddle*, 288 F. App'x 768, 769 (2d Cir. 2008); *see* Local Civ. R. 6.3.

Applying this standard, I deny the Motion for Reconsideration with respect to Plaintiff's ADEA claim and grant it with respect to Plaintiff's remaining claims. Upon reconsideration of the remaining claims, I grant Defendants' Motion for Summary Judgment.

A.    The ADEA Claim[3]

In its April 7, 2008 Memorandum Decision and Order ("Order"), the Court correctly laid out the elements necessary to succeed on a claim for discrimination under the ADEA. (Order at 2.) It held that there was "no genuine issue of disputed fact that the adverse employment action was taken as a result of Plaintiff's own unjustified actions in refusing to attend the necessary training to be qualified for the position of High School Physical Education Teacher . . . ." (*Id.* at 4.) In other words, the Court found that Plaintiff had failed to show that he satisfied the second element of a *prima facie* case for age discrimination under the ADEA: that he was qualified for the job. Further, the Court found that the transfer of Plaintiff to the elementary school "was justified and not pretextual as a coverup for age discrimination." (*Id.*)

---

[3] The Court notes that Plaintiff brought his age discrimination claim under Section 1983 as well as the ADEA. A separate analysis of the Section 1983 claim is not necessary, however, because age discrimination claims under the two statutes rise and fall together. *See Kearney v. County of Rockland*, 185 F. App'x 68, 70 (2d Cir. 2006).

Plaintiff argues that the Court overlooked certain facts when it decided the ADEA claim on summary judgment.  (*See* Plaintiff's Memorandum in Support of Reconsideration ("Pl.'s MTR") at 15-19.)  Specifically, Plaintiff believes the Court ignored: (1) the 1999 removal of Plaintiff as Varsity Lacrosse Coach in favor of a younger coach; (2) Plaintiff's replacement in 2004 by a younger teacher; (3) affidavits stating that Plaintiff was allegedly asked to resign; and (4) that Plaintiff allegedly offered to take the CPR/AED course at a later date.  (*Id.* at 16-17.)   There is no indication, however, that the Court, on summary judgment, overlooked any of this evidence.  Even if it did, these allegations would not alter the Court's conclusion on this claim.

Judge Brieant found, and I concur, that Plaintiff's refusal to attend training required for the high school's physical education teachers—specifically, CPR and Automated External Defibrillation ("CPR/AED") training necessary to teach the ninth grade physical education curriculum, to which those subjects had been added—rendered Plaintiff unqualified for the position of high school physical education teacher.  Plaintiff having failed to make out a *prima facie* case of discrimination, Judge Brieant had no occasion to reach the other requirements of a *prima facie* case or the second or third prong of the *McDonnell-Douglas* test.  (*See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); Order at 4-5.)  Accordingly, he did not err in not discussing whether the circumstances supported an inference of discrimination, Defendant's proffered non-discriminatory reason for Plaintiff's transfer to the elementary school, and Plaintiff's alleged evidence of pretext.  In any event, the evidence to which Plaintiff points does not establish discrimination or pretext.

First, the 1999 allegations were resolved pursuant to a Settlement Agreement in which both sides agreed that no further lawsuits would be brought relating to that action. (*See* Decl. of Jonathan Harwood ("Harwood Decl.") Ex. C.)  Therefore, Plaintiff's age discrimination claim cannot rest on facts relating to that litigation.

Second, that Plaintiff was replaced by a younger teacher in 2004 does not itself suggest discrimination.  Plaintiff, by his own admission, walked out of the CPR/AED training being attended by the other high school physical education teachers.[4]  (Harwood Decl. Ex. B ("Kear Depo.") at 158, 170-73.)  The Athletic Director regarded this as showing a lack of commitment to the high school physical education program (Harwood Decl. Ex. F), and the principal regarded this as unprofessional conduct (Kear Depo. at 179).  By Plaintiff's own account, his replacement was chosen not based on age, but because the replacement was the varsity football coach, and it was advantageous to the school and the team to have the football coach in the same school as his players.  (*Id.* at 111-13.)

Third, the affidavits to which Plaintiff refers do not support an inference of age discrimination.  One is completely conclusory and mostly second-hand (Vincenzo Aff. ¶ 28), and the other has nothing to do with age and relates to events occurring years after the alleged age-discriminatory transfer (Grebinar Aff. ¶¶ 8-10).

---

[4] Plaintiff argues that he understood from the Athletic Director ("A.D.") that the training was optional (Pl.'s Mem. in Opp'n to Summary Judgment ("Pl.'s MSJ Opp'n") at 10-11), but by his own account, all the A.D. said, upon being told by Plaintiff that Plaintiff would not attend the training was, "I can't force you to do the training." (Kear Depo. at 156.)  This statement cannot reasonably be interpreted as excusing Plaintiff's refusal to attend, assuring Plaintiff there would be no effect on his qualifications to teach high school, or otherwise rendering the training something Plaintiff could do or not, at his whim, without repercussions.

Lastly, that Plaintiff may have offered to take the CPR/AED course at a later date (after he realized that his refusal rendered him unqualified to teach in the high school and that he would be transferred) is not evidence of discrimination.  Plaintiff had his opportunity to become qualified to teach physical education by taking the CPR/AED course when it was offered but chose not to participate.  The school was under no obligation to arrange a special training session for Plaintiff later on.

Because the Court did not overlook any controlling decisions or material facts relating to Plaintiff's ADEA claim at the summary judgment stage, Plaintiff's Motion for Reconsideration on this claim is denied.[5]

B.     The Non-ADEA Claims

In its April 7, 2008 Order, the Court did not analyze the gender discrimination, hostile work environment, or contract claims.  Because the Court failed to rule

---

[5] On March 7, 2008 Plaintiff made an application to the Court, pursuant to Fed. R. Civ. P. 56(f), requesting that Defendants produce minutes of Athletic Department meetings in which CPR/AED training was developed or discussed.  (*See* Notice of Cross-Motion Pursuant to Rule 56(f); Decl. of Peter Hoffman Pursuant to Rule 56(f) ¶ 3.)  The Court, on March 28, 2008, asked Defendants to produce such meeting minutes or affidavits from two individuals confirming that such minutes could not be located.  (*See* Oral Argument Tr. 16, March 28, 2008.)  Defendants subsequently submitted affidavits from those individuals on April 4, 2008 and April 7, 2008, respectively, confirming that all such documentation that could be located had been provided.  (Aff. of Richard Beckley; Aff. of Marianne Lazelere.)  On April 7, 2008, Plaintiff sent a letter to the Court asserting that the affidavits did not comply with the Court's March 28, 2008 directive.  The Court's Order on summary judgment was issued that same day.

Plaintiff argues that the Court should not have ruled on Defendants' Motion for Summary Judgment before addressing "issues attendant to Plaintiff's [Rule 56(f)] application."  (Pl.'s MTR at 20.)  Even if the Court did not consider the affidavits submitted (as appears likely considering one was not sent until the day the opinion was issued), those affidavits appear to be in compliance with the Court's directive and do not contain any material information that would alter the Court's decision to dismiss Plaintiff's ADEA claim.  Nor has Plaintiff explained how any additional minutes (assuming he has reason to believe that any beyond those produced are in existence) would affect the issues in this case.

specifically on these claims, Plaintiff's Motion for Reconsideration as to these claims is granted and analyzed below.

      1.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law . . . ." *Id.* On a motion for summary judgment, courts must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001) (internal quotation marks omitted). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the nonmoving party "to present evidence sufficient to satisfy every element of the claim." *Holcomb*, 521 F.3d at 137.

      2.    <u>Gender Discrimination</u>[6]

---

[6] Plaintiff brings gender discrimination claims under Title VII and Section 1983. Discrimination claims brought under Section 1983 are analyzed under the same standard as discrimination claims under Title VII. *See Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) ("The elements of one are generally the same as the elements of the other and the two must stand or fall together.") Therefore, as with the age discrimination claim, a separate analysis under each statute is not necessary.

The evidentiary framework used to evaluate gender discrimination claims is the same as is used for age discrimination claims. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009). Plaintiff must establish that "(1) [he] was within the protected class; (2) [he] was qualified for the position; (3) [he] was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Id.* Once Plaintiff has established a *prima facie* case of gender discrimination, the burden shifts to the Defendants to proffer a legitimate, non-discriminatory reason for the adverse action. *Id.* at 498-99. If Defendant carries that burden, the burden shifts back to Plaintiff to show that the proffered reason is a pretext for discrimination. *Id.* at 499.

For the same reasons discussed in the analysis of his ADEA claim, Plaintiff has not made out a *prima facie* case because he has not shown that he was qualified for the position. Even assuming, for the sake of argument, that Plaintiff was qualified, he has failed to show that "the adverse action occurred under circumstances giving rise to an inference of discrimination." *Id.* at 498. The decision to transfer Plaintiff—the alleged adverse employment action—was made exclusively by men,[7] and Plaintiff has produced no evidence suggesting it was the result of anything other than his refusal to take the CPR/AED training class and the administrators' dissatisfaction with his professional commitment. Furthermore, Plaintiff was replaced by a male. While not dispositive, this fact weighs against a finding of discrimination. *See Stouter v. Smithtown Cent. Sch. Dist.*, No. 07-CV-2707, 2010 WL 520628, at *7 (E.D.N.Y. Feb. 12, 2010) (citing

---

[7] *See Boyce-Idlett v. Verizon Corp. Servs.*, 06-CV-975, 2007 WL 2589445, at *6 (S.D.N.Y. Aug. 30, 2007) ("The premise of the plaintiff's gender discrimination claim is curious because she alleged that . . . the supervisor who took adverse actions against her, including terminating her employment, is of the same sex as the plaintiff.").

*Williams v. Palladia, Inc.*, No. 07-CV-7720, 2009 WL 362100, at *9 (S.D.N.Y. Feb. 10, 2009)).

All of Plaintiff's specific allegations relating to gender discrimination are unrelated to his transfer.  Plaintiff asserts that the male physical education teachers were left out of the decision to make CPR/AED part of the curriculum and that women had secret meetings about the architectural design of a new building.  (Kear Depo. 124, 165-66.)  These allegations are unconnected to the adverse employment action, and therefore cannot support a gender discrimination claim in connection therewith.

Plaintiff argues that his "limited opportunities to engage in chaperoning activities" support his gender discrimination claim.  (Pl.'s MSJ Opp'n at 19.)  Even assuming, for the sake of argument, that limiting Plaintiff's chaperoning opportunities constituted an adverse employment action, this allegation of discrimination is entirely conclusory, stating simply that "many of the assignments [went] to women."  (*Id.*)  In fact, Plaintiff's own testimony indicates that he got fewer chaperoning assignments because the woman in charge of assignments was upset about his decision not to give students a physical fitness test, not because of any gender animus.  (*See* Kear Depo. 60-62.)

Plaintiff has failed to show that any adverse employment action was taken against him because of his gender.  Therefore, his gender discrimination claim is dismissed.

3.      Hostile Work Environment

To survive summary judgment on a hostile work environment claim (whether under Title VII or Section 1983), Plaintiff must come forward with "evidence not only that [he] subjectively perceived the environment to be hostile or abusive, but also that the environment was objectively hostile and abusive, that is, that it was permeated with

discriminatory intimidation, ridicule, and insult, . . . that is sufficiently severe or pervasive to alter the conditions of . . . [his work] environment." *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (internal quotation marks and alterations omitted). "To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). "Pervasive" harassment is harassment that is "more than episodic," and instead "continuous and concerted." *Hayut*, 352 F.3d at 745. Most importantly, "[a] plaintiff must also demonstrate that [he] was subjected to the hostility because of [his] membership in a protected class." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).

Plaintiff has not shown the requisite degree of hostility and abuse necessary to succeed on this claim. Nothing alleged in the Complaint or in the supporting affidavits and depositions gives rise to an inference that Plaintiff was subject to discriminatory intimidation, ridicule, or any other actions that would create a hostile work environment. Plaintiff even admitted in his deposition that "intimidation" or "abuse" were not words he would use to describe the atmosphere in which he worked. (Kear Depo. at 223.) Plaintiff's counsel argues that "the meaning of 'hostile' to a layman can be different" than its meaning under the law. (Pl.'s MSJ Opp'n at 23.) But Plaintiff's counsel does not provide any basis for concluding that the legal definition is different than the layman's in this case. Regardless, Plaintiff's hesitance to use these words to describe his work environment is strong evidence that Plaintiff did not subjectively view his work environment as abusive.

Plaintiff's specific allegations simply do not rise to a level of pervasive intimidation, ridicule, and insult.  Plaintiff alleges that being evaluated three out of every four years—as opposed to the normal once every four years—is evidence of hostile work environment.  (Pl.'s MSJ Opp'n at 24.)  Increased scrutiny or criticism, however, is not, absent additional evidence of mistreatment, evidence of a hostile work environment.  *See Eldaghar v. Dep't of Citywide Admin. Servs.*, 02-CV-9151, 2008 WL 2971467, at *16 (S.D.N.Y. July 31, 2008).  Plaintiff also alleges that denying him a varsity coaching position constituted abuse "in the psychological sense."  (Kear Depo. at 223-24; Pl.'s MSJ Opp'n at 24.)  But professionals are often denied their positions of choice.  Such action certainly does not cause an objectively reasonable person to feel psychologically abused, and does not support a hostile work environment claim, which must involve severe, pervasive effects on a plaintiff's day-to-day workplace, not infrequent isolated actions with no effect on the work environment.  *See Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006).  Tellingly, when asked if he was subject to any other harassment besides "being put into formal evaluations," Plaintiff responded, "no,"  (Kear Depo. at 224),  belying his claim that he was subject to a hostile work environment.  Therefore, this claim is dismissed.

4.    State Law Claims

Having dismissed all the federal causes of action, I decline to exercise supplemental jurisdiction over the remaining state law claims.[8]  *See Carnegie-Mellon*

---

[8] If Plaintiff chooses to pursue his contract claim in state court, he must do a better job of explaining it.  The 2001 Settlement Agreement explicitly states that Defendants have "no obligation, contractual or otherwise, to reappoint [Plaintiff] to any lacrosse coach position in the District in the future."  (Harwood Decl. Ex C.)  Plaintiff presents no evidence that he is contractually entitled to any position.  The Memorandum of Agreement on the Reappointment of Coaches simply encourages communication

*Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims.").

## III.    Conclusion

For the reasons stated above, Plaintiff's Motion to reconsider the Court's decision on his age discrimination claim is denied. His Motion to reconsider the remaining claims is granted. Upon reconsideration, Defendants' Motion for Summary Judgment is granted in its entirety. All Plaintiff's federal claims are dismissed with prejudice. I decline to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendants, and they are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending motion (Doc. 54) and close the case.

**SO ORDERED.**

Dated:  May **6** , 2010
White Plains, New York

CATHY SEIBEL, U.S.D.J.

---

between the Athletic Director and existing coaches, and leaves reappointment power exclusively with the Superintendent. (Harwood Decl. Ex. D.) Plaintiff was not an existing coach in 2006 when he was denied the coaching position. Therefore, the Memorandum does not even appear to apply to him.